[No. D005129. Fourth Dist., Div. One. Sept. 19, 1986.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
RITA RUIZ, Real Party in Interest.

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Thomas F. McArdle, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Alice L. Cate and Stephen J. Perrello, Jr., for Real Party in Interest.

**OPINION**

**LEWIS, J.**—In this extradition proceeding the real party in interest, Rita Ruiz, was arrested in San Diego pursuant to a Texas arrest warrant based on a charge of felonious interference with child custody (Tex. Pen. Code, § 25.03). Responding to the extradition demand of the Governor of Texas, the Governor of California issued an arrest warrant for Ruiz, pursuant to Penal Code[1] section 1549.2. Pending proceedings on Ruiz's petition for habeas corpus contesting the extradition, the superior court released Ruiz on bail because it believed the statute denying bail in this situation, section 1550.1, is unconstitutional. The People seek a writ of mandate to compel the immediate incarceration of Ruiz without bail, saying the relevant statute, section 1550.1, forbids release on bail of persons subject to extradition proceedings, and the trial court exceeded its jurisdiction by releasing Ruiz on bail on the sole ground that section 1550.1 is unconstitutional. The People have no immediate remedy other than by way of petition for writ of mandate, because whether Ruiz's petition for habeas corpus is granted or denied, the issue will become moot. We conclude the trial court had no legal basis to declare the controlling statute unconstitutional. Ruiz is not entitled to bail at this time. Accordingly the writ shall issue.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

Section 1550.1, the controlling statute here, provides in pertinent part: ". . . A warrant issued in accordance with the provisions of Section 1549.2 shall be presumed to be valid, and unless a court finds that the person in custody is not the same person named in the warrant, or that the person is not a fugitive from justice, or otherwise subject to extradition under Section 1549.1, or that there is no criminal charge or criminal proceeding pending against the person in the demanding state, or that the documents are not on their face in order, the person named in the warrant shall be held in custody at all times, and shall not be eligible for release on bail."

The statute clearly states that unless a court finds certain facts to exist, such as that the person in custody is not the person named in the warrant of extradition, the court may not release the person named in the warrant on bail. Here, the trial court did not find that any of the statutory conditions existed. Rather, after Ruiz had been incarcerated pursuant to the California Governor's arrest warrant and pending determination of her petition for habeas corpus, the trial court after a hearing released her on bail solely because in the court's view the statute denying bail is unconstitutional. The court specifically said its finding of unconstitutionality was premised on the United States Constitution, Fifth Amendment guarantee of due process. The court also expressed these thoughts: "I'm not suggesting that there should not be very high standards when you're determining whether to hold someone without bail, and perhaps those standards should be different, but I don't have a doubt in my mind that Miss Ruiz is going to make her court appearances and she is going to be here. Nor do I feel it appropriate to further burden our overcrowded jails and keep her from her family until some of those issues can be litigated."

Although California appears to be unique in denying bail to extradition subjects by statute, nevertheless the Uniform Criminal Extradition Act does not provide for bail, and the majority of American jurisdictions deny bail in extradition procedures, albeit by judicial decision rather than by statute. (See *Meechaicum* v. *Fountain* (D.C.Kan. 1982) 537 F.Supp. 1098, 1100, and (10th Cir. 1983) 696 F.2d 790, 792.) As that decision points out, "'The rationale of these decisions is that because the fugitive is being held for another state he should be readily available to be turned over to those who arrive to return him. A presumption exists that the demanding state will accord the fugitive all his legal rights, including that of bail.'" (*Meechaicum* v. *Fountain, supra*, 696 F.2d at p. 792,[2] quoting from *Deas* v. *Weinshienk* (1975) 188 Colo. 17 [533 P.2d 496, 497]; see also *State* v. *Second Judicial Dist. Ct.* (1970) 86 Nev. 531 [471 P.2d 224, 225], cert. den. 401 U.S. 910

---

[2]Bail was, however, allowed in *Meechaicum* because the defendant was also wanted in the asylum state and was first to be tried there on bailable offenses.

[27 L.Ed.2d 809, 91 S.Ct. 874]; *State v. Pritchett* (1975) 12 Wn.App. 673 [530 P.2d 1348, 1349], both cited in *Meechaicum, supra*.) Jurisdictions which deny bail in extradition matters by judicial decision include Arkansas, *Cadle v. Cauthron* (1979) 266 Ark. 419 [584 S.W.2d 6]; Arizona, *Burr v. Frey* (1965) 2 Ariz.App. 238 [407 P.2d 779]; Delaware, *Grano v. State* (Del. Super. 1969) 257 A.2d 768; Florida, *Buchanan v. State ex rel. Weiss* (Fla.App. 1964) 166 So.2d 596; Indiana, *State ex rel. Howard v. St. Joseph Superior Court* (1974) 262 Ind. 367 [316 N.E.2d 356]; Illinois, *Beauchamp v. Elrod* (1985) 137 Ill.App.3d 208 [484 N.E.2d 817]; and Utah, *Emig v. Hayward* (Utah 1985) 703 P.2d 1043, 1049-1050; see Annotation, 56 A.L.R.2d 668, 675, and supplement. Other jurisdictions supporting the majority rule that bail is not allowed are noted, e.g., in *Beauchamp v. Elrod, supra*, 484 N.E.2d at page 823.

As has been noted in the recent Utah decision in *Emig v. Hayward, supra*: "Different rules apply to the period following the issuance of the governor's warrant. Under the Uniform Criminal Extradition Act, the interest of the asylum state—Utah—in detaining the fugitive and holding him ready for delivery to the demanding state increases markedly once the governor's warrant issues; from this point on there is no provision for release on bail. [Citations omitted.] This widely accepted rule is rationally rooted in the practicalities of the extradition process:

"'One of the reasons supporting the rule against granting bail in extradition cases where the fugitive has been reduced to custody by the execution of a governor's rendition warrant, is because the offense is not one cognizable in the courts of the asylum state, whereas the demanding state has all of the facilities to determine the gravity of the offense, the amount of bail, if any, and the conditions thereof. Here there is no restraint on the respondent's leaving the jurisdiction. The integrity of the processes of the courts of [the asylum state] as well as the solemnity and dignity that we should accord the request of a demanding sister state, places in jeopardy the ability of this state to produce the prisoner for delivery to the demanding state when that time arrives.' (*Buchanan v. State ex rel. Weiss*, Fla.App. 166 So.2d 596, 597 (1964). *See also State ex rel Stringer v. Quigg*, 91 Fla. 197, 204-05, 107 So. 409, 411 (1926)." (703 P.2d at p. 1050.)

■ As was noted in the decision in *Michigan v. Doran* (1978) 439 U.S. 282 [58 L.Ed.2d 521, 99 S.Ct. 530]: "The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Biddinger v. Commissioner of Police*, 245 U.S. 128, 132-133 (1917); *Appleyard v. Massachusetts*, 203 U.S. 222, 227 (1906). The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and

thus 'balkanize' the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause, served important national objectives of a newly developing country striving to foster national unity. . . .

"Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution. *Biddinger, supra,* at 132; *In re Strauss,* 197 U.S. 324, 332 (1905); R. Hurd, A Treatise on the Right of Personal Liberty and the Writ of Habeas Corpus 598 (1858). The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.

"Near the turn of the century this Court, after acknowledging the possibility that persons may give false information to the police or prosecutors and that a prosecuting attorney may act 'either wantonly or ignorantly,' concluded:

"'While courts will always endeavor to see that no such attempted wrong is successful, on the other hand, care must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt.' [Citation.]

■ "Whatever the scope of discretion vested in the governor of an asylum state [citation omitted], the courts of an asylum state are bound by Art. IV, § 2, cf. *Compton* v. *Alabama,* 214 U.S. 1, 8 (1909), by § 3182, and, where adopted, by the Uniform Criminal Extradition Act. A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. [Citation omitted.] Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." (439 U.S. at pp. 287-289 [58 L.Ed.2d at pp. 526-527].)

Extradition is not the only procedure in which bail is unavailable. ■ Thus the United States Supreme Court, in an alien deportation case, pointed out the bail clause in the Eighth Amendment to the United States Constitution (prohibiting excessive bail) was never intended to mandate that bail be

available in all situations, but only to require that where bail is available, it should not be set excessively high. (*Carlson* v. *Landon* (1952) 342 U.S. 524, 545-546 [96 L.Ed. 547, 563-564, 72 S.Ct. 525].) That case points out bail need not be available, for example, in criminal capital cases. In California, bail is not available as of right during a criminal trial, per section 1129, which provision has been held constitutional. (*People* v. *Williams* (1881) 59 Cal. 674, 676-677; *People* v. *Enos* (1973) 34 Cal.App.3d 25, 42-43 [109 Cal.Rptr. 876].) Bail following conviction of a felony is likewise discretionary, not a matter of right. (§ 1272, subd. 3; *In re Podesto* (1976) 15 Cal.3d 921, 929-931 [127 Cal.Rptr. 97, 544 P.2d 1297].)

Extradition represents an exercise of the executive decision-making power. The court's role is limited to determining only the four issues delineated in the statute: identity of the person, status as a fugitive from justice, pendency of a criminal charge in the demanding jurisdiction, and regularity of the extradition documents. (See *Michigan* v. *Doran, supra,* 439 U.S. at pp. 288-289 [58 L.Ed.2d at p. 527].) For a court in such situation to grant bail on a nonstatutory ground, is to interfere with the exercise of executive discretion. Similarly, the grant of bail to a parolee after placement of a parole hold on him by the executive power is also held beyond a court's discretion. (*In re Law* (1973) 10 Cal.3d 21, 26, 28 [109 Cal.Rptr. 573, 513 P.2d 621].) Here the infringement is even more manifest because in the parole situation there is merely no authority to grant bail while in this case there is a statutory prohibition.

Ruiz argues section 1550.1 is not applicable and the governing statutes instead are sections 1490 and 1491 providing generally for bail for one imprisoned on a criminal charge, and section 1476, providing for bail pending determination of a habeas corpus petition. However, these general statutes cannot control the specific question of bail in an extradition proceeding, a matter specifically governed by California's version of the Uniform Criminal Extradition Act, and particularly, in the situation here, by section 1550.1. A basic rule of statutory construction is that a special statute dealing expressly with a particular subject controls over a more general statute covering the same subject matter. (*Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 890 [134 Cal.Rptr. 844]; *In re Ward* (1964) 227 Cal.App.2d 369, 374-375 [38 Cal.Rptr. 650].)

 Ruiz also argues four recent cases have granted bail pending an extradition challenge, despite issuance of a governor's warrant, citing decisions from Maine, Connecticut, Oregon and a federal district court. These cases, however, as noted by the decisions we have cited, represent a minority rule on this issue, nor are they more recent than many authorities adopting

the majority rule that bail is not available. (E.g., *Beauchamp* v. *Elrod, supra,* 137 Ill.App.3d 208 and *Emig* v. *Hayward, supra,* 703 P.2d 1043.)

Finally, she argues she has been released not on bail but on her own recognizance, therefore, section 1550.1 does not apply because she is not in the custody of the bondsman but directly in the custody of the court. This is a meaningless distinction in light of the purpose of denying bail under section 1550.1, which is, as we have stated, to maximize the probability the defendant will be available when the officers of the demanding state arrive to take custody of her.

We conclude the trial court's action was not warranted by any law or judicial decision and was beyond its jurisdiction.

An alternative writ or order to show cause would add nothing to the presentation. A peremptory writ is proper. (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Let a writ of mandate issue directing the superior court to vacate its order granting bail to real party in interest and to make a new order immediately remanding real party to custody pending determination of her petition for writ of habeas corpus. This opinion shall be final immediately. (Cal. Rules of Court, rule 24(c).)

Kremer, P. J., and Work, J., concurred.